**Hans R. GRAMIGER,**
**Plaintiff–Appellant,**

v.

**COUNTY OF PITKIN, Colorado, the Board of County Commissioners of the County of Pitkin, Colorado, Thomas J. Blake, member of the Board of County Commissioners, Robert W. Child, member of the Board of County Commissioners, Michael J. Kinsley, member of the Board of County Commissioners, Helen A. Kalin Klanderud, member of the Board of County Commissioners, George W. Madsen, member of the Board of County Commissioners, Bob Braudis, member of the Board of County Commissioners, Colette Penne, member of the Board of County Commissioners, and Fred Crowley, member of the Board of County Commissioners, Defendants–Appellees.**

No. 88CA1599.

Colorado Court of Appeals,
Div. IV.

Dec. 21, 1989.

Rehearing Denied March 8, 1990.

Certiorari Denied July 30, 1990.

Keller, Dunievitz, Johnson & Wahlberg, Alex Stephen Keller, Denver, for plaintiff-appellant.

Thomas Fenton Smith, County Atty., Timothy E. Whitsitt, Asst. County Atty., Aspen, for defendants-appellees.

Opinion by Judge CRISWELL.

Plaintiff, Hans R. Gramiger, appeals from the judgment dismissing his declaratory judgment action against the defendant, County of Pitkin. He contends that the county is legally required to allow him to build a restaurant upon land owned by him, notwithstanding the county's adoption of a zoning resolution prohibiting such use, because (1) the final judgment in previous litigation between these two parties collaterally estops the county from applying the terms of that zoning resolution to his requested use of the ground, and (2) the county's prior improper refusal to issue an excavation and foundation permit to him similarly estops it from applying the zoning resolution to his land. We affirm.

Plaintiff acquired the land involved, which is a geologic formation located at the edge of the City of Aspen referred to as "Shadow Mountain," in 1961. Sometime after acquiring this property, plaintiff conceived the idea of erecting a restaurant on the top of Shadow Mountain to be served by an aerial tram or funicular from its base. However, plaintiff did nothing to further this project from the date of his acquisition of the ground until the early 1970's, except to institute a series of quiet title actions.

Sometime in 1972, the county began to consider a change in the zoning that was applicable to plaintiff's land (as well as to other ground located in the same zone district). It was not, however, until the fall of 1973 that the county planning commission took any official action to approve a specific proposal. And, it was not until March 25, 1974, that the board of county commissioners adopted a new zoning resolution (the 1974 resolution).

Neither the preceding zoning resolution nor the 1974 resolution is a part of the record on appeal. Nevertheless, the parties agree that, prior to the adoption of the 1974 resolution, a restaurant was a permitted use of plaintiff's ground. They also agree that the 1974 resolution prohibits such use.

More than a year prior to the adoption of the 1974 resolution, and at a time when no moratorium upon building starts had been adopted, plaintiff applied to the county building inspector for a permit to commence construction. When the official did not issue the permit, but told plaintiff that he was going to consult with the county commissioners concerning the matter, plaintiff instituted a legal action seeking an order in the nature of the common law writ of mandamus, directing the inspector to issue the permit.

A jury trial in that action resulted in a verdict and judgment for plaintiff, requiring the county to issue the permit applied for. On the initial appeal to this court, that

judgment was reversed because of plaintiff's failure to exhaust the administrative remedies granted by the pre–1974 zoning resolution. *Gramiger v. Crowley*, 638 P.2d 797 (Colo.App.1981).

On certiorari review, however, the supreme court reversed this court's judgment; it held that the permit applied for by plaintiff was not a building permit to which the administrative remedies applied, but was only an excavation and foundation permit to which those remedies were inapplicable. *Gramiger v. Crowley*, 660 P.2d 1279 (Colo.1983). The matter was thus remanded to this court with directions to consider and decide the substantive merits of the county's appeal.

On remand, this court concluded that, at the time plaintiff applied for the permit, there was no "legal impediment" to its issuance; that "the building inspector had a clear duty to issue the permit"; and that plaintiff "had a clear right" to the mandamus relief sought by him. The trial court's judgment was thus affirmed on this basis. *Gramiger v. Crowley*, (Colo.App. No. 78–882, March 1, 1984) (not selected for official publication).

The county therefore issued to plaintiff the excavation and foundation permit that was the subject of the prior litigation. However, it informed him that it would not thereafter issue a building permit to authorize the construction of the restaurant because that use would violate the 1974 resolution. Plaintiff then initiated this declaratory judgment action, seeking a judicial determination that it was the prior zoning resolution and not the 1974 resolution that was required to be applied to his intended use of the property.

After a bench trial, the trial court dismissed plaintiff's complaint. In doing so, it found that, while plaintiff had expended between $80,000 and $90,000 on his restaurant project as of the date of trial, most of that expenditure was comprised of the litigation costs incurred in obtaining the excavation and foundation permit. The trial court further found that completion of the excavation and foundation work was necessary before a final restaurant design could be adopted. However, it also found that much of the design planning could have been accomplished before that work was completed, and that plaintiff had had no engineering or other professional plans or specifications prepared, either for the excavation work under the issued permit or for the building itself.

Finally, the trial court found that, even if the county had issued the excavation and foundation permit to plaintiff in a timely fashion, he would not have been ready for the issuance of a building permit prior to the effective date of the 1974 resolution. It characterized plaintiff's plans for the restaurant as consisting, in large part, as nothing more than a "general concept."

The trial court concluded that the judgment entered in the prior litigation did not collaterally estop the county from requiring plaintiff to comply with the 1974 resolution and that plaintiff's right to make use of his property for restaurant purposes had not vested as of the date of the adoption of that resolution. Hence, that court denied all judicial relief to plaintiff.

I.

■ Plaintiff first asserts that the final judgment entered in the prior litigation collaterally estops the county from denying that the pre–1974 resolution must be applied in determining plaintiff's right to construct the contemplated restaurant. In making this assertion, plaintiff notes that the instructions given to the jury in the first case authorized the jurors to return a verdict in his favor only if they found that the county acted arbitrarily in not issuing the permit or, in the alternative, that it was estopped from applying the 1974 resolution to plaintiff's application. Thus, plaintiff argues that the jury verdict in his favor in the first case determined that it was the prior resolution, and not the 1974 zoning resolution, that was to be applied to his restaurant "project." We disagree.

■ In order for the doctrine of collateral estoppel to apply, the issue determined in the first proceeding must be identical to the issue presented in the later proceeding.

*Colorado Springs v. Industrial Commission,* 749 P.2d 412 (Colo.1988); *Industrial Commission v. Moffat County School District RE No. 1,* 732 P.2d 616 (Colo.1987).

Here, the determinative consideration in plaintiff's first action was that there was neither a prohibition against a restaurant use nor a moratorium in effect *at the time plaintiff applied for the permit.* Thus, it was concluded that, at the time of the permit application, plaintiff had a "clear right" to its issuance, and the building inspector had a "clear duty" to issue it. This being the case, the question whether the county might also have been estopped to deny the permit's issuance was irrelevant to the final determination in that litigation.

■ Further, we view the question whether a preliminary or comprehensive building permit must issue as one distinct from the issue whether a landowner's rights have "vested" under that permit. As a general rule, the mere pendency of a zoning amendment at the time that an application for a permit is made does not furnish a proper basis upon which to deny that application. In such instances, the issuance of the permit may be compelled by mandamus. *Howard Simpson Realty Co. v. City of Marietta,* 220 Ga. 727, 141 S.E.2d 460 (1965). *See generally* 4 E.H. Ziegler, *Rathkopf's Law of Zoning & Planning* § 49.06 (1989); 4 R.M. Anderson, *American Law of Zoning 3d* § 28.11 (1986).

■ Although some states have held that the right to mandamus to compel the issuance of a permit is to be governed by the law in existence on the date of the judicial decision upon the issue, *see* 4 E.H. Ziegler, *supra,* pp. 49–21 through 49–35, the Colorado Supreme Court has determined that the prohibition against retroactive legislation requires the law in existence at the time of the permit application to govern the right to the issuance of the permit. *City & County of Denver v. Denver Buick, Inc.,* 141 Colo. 121, 347 P.2d 919 (1959). *Accord Union Oil Co. v. Worthington,* 62 Ohio St.2d 263, 405 N.E.2d 277 (1980). *Cf. Crittenden v. Hasser,* 41 Colo.App. 235, 585 P.2d 928 (1978) (if amending ordinance is adopted before normal processing of application is completed,

it is not improper to apply new ordinance). It was the rule adopted by the supreme court in *Denver Buick* that this court applied in issuing its final opinion in the prior litigation.

■ However, the fact that a landowner may be entitled to the issuance of a permit does not necessarily entitle him to exercise the rights granted by that permit in the face of subsequently adopted legislation. It is only if a permittee's rights have become "vested" under the permit before the legislation becomes effective that the permittee may continue to exercise those rights; mere issuance of a permit, without more, does not cause such a vesting. *Cline v. Boulder,* 168 Colo. 112, 450 P.2d 335 (1969). *See P–W Investments, Inc. v. Westminster,* 655 P.2d 1365 (Colo.1982.)

Hence, the question whether a landowner is entitled to have a permit issued under *Denver v. Denver Buick, supra,* is a question substantially different from the question whether the permittee's rights have vested within the meaning of *Cline v. Boulder, supra.*

The judgment in the prior litigation resolved the first issue, but the second issue was not addressed either by the jury or by the court in that litigation. That judgment, therefore, does not collaterally estop the county from denying that plaintiff's right to construct a restaurant on his land has vested. *See Colorado Springs v. Industrial Commission, supra.*

## II.

The present majority rule is that a landowner does not acquire a constitutionally protected vested right simply by the issuance of a permit. Rather, in order for the rights granted by a permit to vest, the permittee must take substantial steps to exercise those rights in reliance on the permit before the effective date of any new legislation that may affect those rights. *P.W. Investments, Inc. v. Westminster, supra.* *See* 4 E.H. Ziegler, *supra,* § 50.03 (1989 Cum.Supp.). Absent such reliance, the adoption of legislation modifying the rights granted by the permit causes the permit to be revoked. *See Cline v. Boulder, supra.*

Plaintiff, however, contends that, because the county wrongfully withheld the permit that he applied for, he was unable to take the steps that would otherwise have secured to him a vested right to build the contemplated restaurant. He argues, therefore, that the county's wrongful action should excuse him from the normal requirement that substantial steps be taken in reliance upon the permit.

The county, on the other hand, asserts that no rights to use land for any particular purpose can become vested absent the issuance of a *final* building permit and substantial steps taken in reliance upon such permit. Hence, it argues that, because plaintiff would not have been in a position even to apply for a final building permit before the 1974 resolution became effective, plaintiff could not have acquired a vested right to continue his construction, even if the excavation and foundation permit had been issued in a timely fashion.

While we tend to disagree, in part, with the assertions of both parties, we agree that plaintiff's evidence did not establish that the 1974 resolution was inapplicable to his land.

It is true, as plaintiff notes, that the county's prior refusal to issue a permit to him made it impossible for him to take substantial steps in reliance upon that permit before the 1974 resolution was adopted. But, such impossibility did not prevent plaintiff from proving what he reasonably *would* have accomplished had the permit been issued in a timely fashion.

Similarly, while it is true, as the county argues, that most "vested rights" cases have involved actions taken in reliance upon a final permit that authorized all of the construction contemplated, this is not universally so. In *Crawford v. McLaughlin*, 172 Colo. 366, 473 P.2d 725 (1970), for example, while the permit issued was determined to be a "building permit" for administrative review purposes, it was undisputed that additional permits were required in order to complete construction of the contemplated improvement. The supreme court held, nevertheless, that plaintiff's reliance upon the prior zoning and the issued permit resulted in a vesting of plaintiff's rights. And, we are not prepared to say that a landowner cannot gain a vested right to continue construction if, pursuant to a properly issued foundation permit that contemplates ultimate construction of a specific improvement, the landowner expends a substantial sum to commence construction of that improvement.

In our view, therefore, the issue presented to the trial court was whether, if the county had issued the excavation and foundation permit to plaintiff in a timely fashion, plaintiff would have undertaken substantial steps to complete the structure before the 1974 resolution became effective. While the trial court did not specifically address this issue, that court's findings, considered in conjunction with plaintiff's failure to present evidence upon this issue, require an affirmance of the trial court's judgment. *See Cole v. Hotz*, 758 P.2d 679 (Colo.App.1987).

Plaintiff testified that he would not have been in a position to apply for a building permit before the date that the 1974 resolution was adopted, even if the foundation permit had been issued when he applied for it. In addition, he failed to provide even an estimate of the work that would have been accomplished by that date or an estimate of the expenditures that he reasonably would have expected to make by that date. Nor did his evidence establish that the excavation and foundation work contemplated by the permit could have been used only for the construction of a restaurant and not for another use authorized by the 1974 resolution.

Given this state of the record, we conclude that the evidence failed, as a matter of law, to establish that the county's initial refusal to issue the foundation permit to plaintiff prevented him from acquiring a vested right to construct his intended restaurant. Hence, the trial court's dismissal of his complaint was proper.

Judgment affirmed.

HUME and NEY, JJ., concur.