DERBY REFINING COMPANY & another[1] *vs.* BOARD OF
ALDERMEN OF CHELSEA & another.[2]

Suffolk. April 4, 1990. - June 19, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Statute*, Construction. *License. Fire Prevention. Real Property*, License to
store flammable products. *Words*, "For cause."

A decision by the board of aldermen of Chelsea, purportedly relying on an
authority granted by G. L. c. 148, § 13, seventh par., to revoke the
license of two corporations to store flammable products was unlawful,
where none of the factors relied on by the board, including its conclu-
sions that the facility posed a health threat to neighboring residents,
violated certain State air quality standards, and posed a nuisance due
to its emission of odors, constituted an appropriate "cause" within the
meaning of G. L. c . 148, § 13, seventh par., to revoke the license. [720-
723]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 20, 1988.

The case was heard by *Barbara J. Rouse*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Ira H. Zaleznik* for the defendants.

*Robert C. Gerrard* (*Carol R. Cohen* with him) for the
plaintiffs.

GREANEY J. This case involves the same liquid asphalt fa-
cility that was the subject of our opinion in *Derby Ref. Co.* v.
*Chelsea, ante* 703 (1990). While that earlier dispute was be-
ing litigated before the Land Court, the board of aldermen of

---

[1]Belcher New England, Inc. The plaintiffs are affiliated corporations
which we shall refer to collectively in this opinion as Belcher because
Belcher is operating the liquid asphalt facility in issue.

[2]The city of Chelsea.

Chelsea (board) voted to hold a hearing on whether to revoke Belcher's license to store flammable products on the premises. The Land Court judge stayed that hearing on the ground that it may have been a device to circumvent the pending litigation before her. Following the Land Court's decision in Belcher's favor, however, the board rescheduled the hearing, and subsequently voted to revoke Belcher's license "for cause," purportedly relying on the authority granted by G. L. c. 148, § 13, seventh par. (1988 ed.).[3] The stated grounds for the board's decision were that the Belcher facility (1) posed a health threat to neighboring citizens; (2) violated certain air quality regulations promulgated by the Department of Environmental Quality Engineering (DEQE) (now the Department of Environmental Protection); and (3) emitted offensive odors that constituted a nuisance.[4]

On June 20, 1988, Belcher filed an action in the nature of certiorari, see G. L. c. 249, § 4 (1988 ed.), in the Superior Court, seeking an order quashing the board's decision. Belcher contended that the "for cause" revocation provision of G. L. c. 148, § 13, seventh par., upon which the board relied in making its decision, may be invoked only when a licensee has breached an express condition of its license, or is operating in a manner which poses a risk of fire or explosion. The defendants responded by arguing that "for cause," as used in § 13, seventh par., should be read broadly to encompass the health, nuisance, and environmental factors upon which the board relied. A judge of the Superior Court agreed with Belcher's position and determined that the board's decision and order should be quashed. An appropriate judgment

---

[3]That paragraph reads in relevant part, as follows:

"Any license granted hereunder or any license for the keeping, storage, manufacture or sale of any of the articles named in section nine, granted prior to July first, nineteen hundred and thirty-six, including any license reinstated and continued by the marshal as herein provided, may be revoked for cause, after notice and a hearing given to such owner or occupant, by the local licensing authority or by the marshal."

[4]The fourth stated ground for conducting the revocation hearing — that Belcher had misrepresented material facts in its license application — was not relied upon by the board in its decision.

was entered. The defendants appealed, and we transferred the case on our own motion. We affirm the judgment.[5]

The defendants argue that both the language of G. L. c. 148, § 13, and our case law interpreting the statute, support the conclusion that a licensing authority may consider factors other than fire or explosion hazards and breach of conditions subsequent when deciding whether to revoke a flammable storage license. In support of their contention, the defendants point specifically to the fourth paragraph of § 13, which authorizes the Fire Marshal, in certain circumstances, to reinstate a flammable storage license, unless that license "has been revoked for cause or the marshal shall have determined that a fire or explosion hazard would result from the exercise of such license."[6] According to the defendants, the separate references to "cause," and to "fire or explosion hazard" indicate that the former must be broader than the latter, otherwise the more general phrase "for cause" would be rendered meaningless surplusage. See *Worcester Hous. Auth.* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 244, 247 (1989).

This argument mischaracterizes the issue in the case. Belcher does not contend, nor did the judge conclude, that fire or explosion hazard was the sole factor a licensing board may properly consider. In her memorandum of decision, the judge expressly recognized that a licensee's failure to file an annual certificate of registration, see *Fallon* v. *Street Comm'rs of Boston*, 309 Mass. 244 (1941), or breach of

---

[5]In the proceedings below, and on appeal, the parties argue several other issues, among them the proper standard of review for the board's decision and evidence issues. Our conclusion that the "for cause" standard in the seventh paragraph of § 13 does not authorize the board to proceed on the grounds relied upon to revoke the license, renders it unnecessary to consider any of the other issues that have been argued in the briefs.

[6]The language in the fourth paragraph of § 13 that the defendants rely on is concerned with the reinstatement of a license that had been issued prior to July 1, 1936, and directs a two-step inquiry by the Fire Marshal: whether the license had been revoked for a cause (such as one of the causes just mentioned), and, if not, whether a risk of fire or explosion presently exists.

some other express condition under which the license was granted, see *Higgins* v. *License Comm'rs of Quincy*, 308 Mass. 142 (1941), could constitute a permissible ground for revocation. Belcher does not dispute this conclusion, but rather argues that the "for cause" provision at issue here should not be read so broadly as to include the factors relied upon by the board. The defendant's statutory interpretation argument does not support the conclusion it would have us reach.

The defendants next seek support for their position from our opinion in *St. James Bldg. Corp.* v. *Commissioner of Pub. Safety*, 260 Mass. 548 (1927). In that case, we held that the Fire Marshal and the Commissioner of Public Safety, when deciding whether a flammable storage license should issue[7] for premises located within the city of Boston, may "consider not only risk of fire and explosion, but also annoyance and inconvenience to others and the general good order and welfare." *Id.* at 555. The defendants argue that if neighborhood impact and general welfare factors may be considered when deciding whether to *issue* a flammable storage license, they must also be permissible bases for a decision to *revoke* one.

The *St. James* case does not help the defendants because the case stands only for the obvious proposition that factors such as those that the defendants rely on here are relevant to the decision whether to *issue* a flammable storage license.[8] See *V.S.H. Realty, Inc.* v. *License Bd. of Worcester*, 13

---

[7]Although the license in *St. James*, *supra* at 555, already had been issued by the street commissioners of Boston, it is evident from a reading of the case that the role of the Fire Marshal and the Commissioner of Public Safety was to determine whether the license should have issued in the first instance, not whether an already issued license should be revoked. ("If the license to use a building for the storage and sale of gasoline is a defence to a charge of maintaining a nuisance, there is reason for not limiting the scope of the inquiry of the licensing body to the question of fire hazard"). As will be made clear below, this distinction is critical.

[8]Further, the *St. James* decision concerns only premises which lie within the metropolitan fire district. See *Rawding* v. *State Fire Marshal*, 272 Mass. 307, 309 (1930).

Mass. App. Ct. 586, 588 (1982). Once a license already has issued, however, it becomes a vested property right of the licensee,[9] and may be revoked only when due process protections are complied with. See *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 290-291 (1980). It follows that the grounds upon which a flammable storage license may be revoked are substantially narrower than the factors which may be considered when such a license is issued.

The power to revoke a license, like all powers of local licensing officials, is limited to the authority granted by the Legislature. See *Higgins* v. *License Comm'rs of Quincy*, 308 Mass. 142, 145 (1941). Looking to the statutory language, we agree with the judge that "[t]he entire thrust of § 13 concerns hazards relating to fire or explosion and the precautions that must be taken to protect the public safety from such events." See *id.* at 144 (characterizing the purpose of a flammable storage license as "to supervise and control a certain use of private property which, unless regulated, might result in a *serious fire hazard* threatening the safety of the community") (emphasis added). Section 13 falls within G. L. c. 148, which is entitled "Fire Prevention," and which focuses on, and sets forth a comprehensive scheme for, the regulation of fire hazards in the Commonwealth. In addition to requiring a license for the storage of flammable materials, c. 148 imposes governmental controls with respect to gas appliances, oil burners, fireworks, blasting operations, space

---

[9]Prior to 1945, a flammable storage license did not vest as a property right upon issuance, but only upon its being exercised by the licensee. See *Fallon* v. *Street Comm'rs of Boston*, 309 Mass. 244, 245 (1941); *Higgins* v. *License Comm'rs of Quincy, supra* at 143-144; *Saxe* v. *Street Comm'rs of Boston*, 307 Mass. 495, 497-498 (1940); *Hanley* v. *Cook*, 245 Mass. 563, 565 (1923). In 1945, the first paragraph of § 13 was amended to provide that a license issued under that section became a vested property right immediately upon issuance. See St. 1945, c. 415, § 1. Accordingly, pre-1945 cases which discuss "revocation" of a license which has not yet been exercised, see, e.g., *Fallon, supra*, do not involve any vested property rights, and, consequently, are not persuasive precedent on the issue of which factors may be considered in making revocation decisions after the date of the 1945 amendment.

heaters, candles, lighted cigarettes, and exploding golf balls. Against the background of the statutory plan, see *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490, 497 (1984), we can perceive no reasonable room for the defendants' contention that environmental and health related concerns which are not made express conditions subsequent upon the issuance of a flammable storage license may later be relied upon as a basis for revoking that license.[10] If adopted, the defendant's expansive view of the statute could result in a licensee being placed on perpetual probation, with a discontented licensing authority possibly questioning the validity of licenses for such diverse reasons as traffic problems, labor law concerns, and a variety of other matters which have no relationship to the purpose of licensing under G. L. c. 148. Accordingly, we conclude that the phrase "for cause," appearing in G. L. c. 148, § 13, seventh par., encompasses only grounds based on risk of fire or explosion, or on a licensee's breach of an express condition subsequent to the issuance of the license.[11]

In revoking the flammable storage license in this case, the board relied on its conclusions that Belcher's facility posed a health threat to neighboring residents, violated certain DEQE air quality regulations, and constituted a nuisance due to its emission of odors. None of these factors constitutes an appropriate "cause," within the meaning of G. L. c. 148, § 13, seventh par. It follows that the judge correctly decided that the board's decision to revoke Belcher's flammable storage license was unlawful.

*Judgment affirmed.*

---

[10]The defendants are not without a remedy because they clearly have other means of rectifying any environmental or health related problems caused by the Belcher facility. See, e.g., 310 Code Mass. Regs. § 7:52 (1984) (empowering municipal authorities to enforce certain DEQE air quality regulations).

[11]The filing of an annual certificate of registration, as required by G. L. c. 148, § 13, second par., is one such condition subsequent.