Garsh, J.
Plaintiff, Rosalie Franks (“Franks”), instituted this action pursuant to G.L.c. 40A, §17, appealing from a decision of the City of Taunton’s Zoning Board of Appeals (“Board”) that a building permit may be issued by the Building Commissioner to defendant, Marshfield Properties Trust (“Marshfield”), for the erection of a 460-foot radio tower. Franks and Marshfield have cross moved for summary judgment. Franks claims that Marshfield is not entitled to a building permit by virtue of changes in 1966 to the applicable zoning ordinance. Marshfield counters that the amendments do not apply because the right to construct the tower on the subject property had vested before the zoning ordinance was amended. For the reasons set forth below, Franks’ motion for summary judgment is allowed, and Marshfield’s motion for summary judgment is denied.
FINDINGS OF FACT
Marshfield is the owner of property located at 585 Winthrop Street, Taunton, Massachusetts. It acquired that property from Henry V. DeJesus (“DeJesus") on August 30, 1996. Prior to the purchase, in December of 1994, at Marshfield’s request, DeJesus sought a building permit for the construction of a 460-foot telecommunications tower. In order to be eligible to receive a building permit, an applicant’s proposed construction must, inter alia, comply with the city’s zoning by-laws. On January 20, 1995, the Building Commissioner, also known as the Building Inspector and who also serves as the city’s Zoning Enforcement Officer, determined that the height of the proposed tower would violate the three-story zoning by-law height restriction then in effect and, thus, DeJesus would need to obtain a variance from the Zoning Board of Appeals in order to obtain a building permit. At that stage, DeJesus had not obtained site plan approval, which is a prerequisite to issuance of a building permit.[1] The Commissioner subsequently returned both the application and the application fee without endorsing it “approved” or “disapproved” and without completing the certification that he had personally inspected the plans and premises.
DeJesus appealed the Commissioner’s decision not to grant a permit. On March 9, 1995, the Board issued a decision overturning the Commissioner’s determination. The Board ruled that DeJesus did not need a variance in order to obtain a building permit because the only height restriction in the by-laws applied to the construction of a building and was inapplicable to the erection of a communications tower. As the Board itself stated, the only “question at hand” was “whether a telecommunications tower of 450-500 feet in height requires a variance from the 3.0 ‘maximum height, in stories’ specification.” The decision did not purport to order the Building Commissioner to issue a permit forthwith notwithstanding any other requirements for issuance that may not have been satisfied.
On April 14, 1995, Franks appealed the Board’s decision that no variance was required to construct the tower. In the thirty-five day interim between the Board’s decision and the filing of an appeal by Franks, no building permit was issued to DeJesus, who still had not sought or obtained site plan approval. DeJesus also did not obtain a building permit before a request for injunctive relief was made by Franks.[2] In connection with her appeal, on April 24, 1996, Franks sought a preliminary injunction seeking to enjoin the issuance of a building permit. The memorandum in opposition to the request for preliminary injunction, filed by DeJesus on May 2, 1995, states, in relevant part: “Henry DeJesus has no intention of seeking a building permit until this litigation has been resolved." At the hearing, counsel for DeJesus advised the court as follows: “[TJhere’s no need for the preliminary injunction ... we’re not asking for a building permit and we don’t intend to do that until this case is resolved.” In response, the court inquired whether DeJesus would be willing simply to stipulate to what had just been represented, to which his counsel responded “Yes ... I put that in my memo today.” The court then denied the motion for preliminary injunction for lack of any demonstration of irreparable harm. The stipulation was not entered as an order of the court. At no time during the pendency of that action, did DeJesus seek issuance of a building permit or seek permission from the court to alter the terms of the stipulation.
On January 16, 1996, there appeared the first publication of notice concerning a proposed ordinance *378 changing the zoning requirements for radio communications towers. On January 30, 1996, Taunton adopted the new ordinance. One of the changes imposed a thirty-five foot height limit on any building or tower; another proscribed setback criteria, requiring all communications towers to be set back from property lines by a distance at least equal to the height of the tower. The amendments, if applicable, would preclude erection of a 460-foot radio tower on the subject lot. Prior to the first publication of notice, DeJesus had not received a building permit or a special permit, and no construction on the tower had begun. Moreover, DeJesus had not fulfilled at least one of the prerequisites to issuance of a building permit since he had not sought or received site plan approval.
On March 7, 1996, the appeal from the Board’s decision was dismissed. One month later, the Appeals Court dismissed Franks’ appeal from the granting of summary judgment. Several months later, on October 16, 1996, nineteen months after the issuance of the Board’s 1995 decision, Marshfield filed an application for site plan approval with the Taunton Municipal Council. On November 19, 1996, Franks requested enforcement of the zoning by-law as amended. On November 21, 1996, the Building Commissioner ruled that Marshfield was entitled to issuance of a building permit once the site plan review process had been completed because a zoning freeze under G.L. 40A, §6 had gone into effect. On December 4, 1996, the Taunton Municipal Council approved Marshfield’s application for site plan approval subject to substantial compliance with fourteen conditions.[3]
Franks appealed the Commissioner’s decision to the Board on the grounds that the provision of G.L.c. 40A relating to a permit zoning freeze only applies to permits actually issued before first publication of notice of public hearing concerning the zoning amendment. On February 6, 1997, the Board denied Franks’ petition, ruling that a permit maybe issued. The Board reasoned as follows:
The Board finds that it upheld the original petition of Mr. DeJesus on March 9, 1995 overruling the building inspectors’ [sic] decision not to grant a building permit. The Board further feels that this decision gave Mr. DeJesus a right to a building permit, that a zoning freeze went into effect when this decision was appealed distinguishing the present case from the Caputo case [Caputo v. Board of Appeals, 330 Mass. 107 (1953)], and therefore, the amendment of the By-Law on Januaiy 30, 1996 was not applicable.
A building permit subsequently was issued to Marshfield.
This action is Franks’ appeal of the Board’s 1997 decision. Marshfield declined to agree not to construct the tower pending the resolution of this action. It successfully opposed the entry of a preliminary injunction, arguing, .in part, that the plaintiff had an adequate remedy at law in the event that she prevails, namely removal of the tower.
DISCUSSION
At issue is whether a landowner receives “vested rights” that protect both the landowner and subsequent purchasers of the land from changes in zoning ordinances where the landowner has not obtained a building permit, or even fulfilled the prerequisites for issuance of such a permit, but the landowner has obtained a ruling from the Zoning Board of Appeals that no variance is needed in order for a permit to issue.
Section six of the Zoning Act makes zoning amendments inapplicable to certain uses and structures not fully completed or even begun. G.L.c. 40A, §6 provides, in relevant part, as follows:
[A] zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law . . . but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing . . .
G.L.c. 40A, §6, ¶1. Thus, under §6, a nonplan zoning freeze comes into effect if, prior to the by-law’s first publication of notice, (1) a structure or use is lawfully in existence or lawfully begun,[4] (2) a building permit has issued, or (3) a special permit has issued. When the first publication of notice was made on January 16, 1996, (1) the subject site was not being used for a telecommunications tower and construction of a tower had not begun; (2) no building permit had been issued to DeJesus; and (3) no special permit had been issued to DeJesus.
While the specific fact pattern presented by the instant facts has not been addressed before, in Caputo v. Board of Appeals, 330 Mass. 107, 111 (1953), the Supreme Judicial Court held that “(t]he fact that the plaintiff filed his application for a permit before the ordinance was amended gave him no vested rights.”[5] In that case, a building commissioner had wrongly denied an application for a building permit to erect a crane and hoist on the applicant’s property; the denial was wrongly upheld by the board of appeals. While an appeal from the board’s decision was pending, the zoning by-laws were amended to prohibit the erection of such a crane and hoist. The landowner prevailed in his appeal to the Superior Court where a decree was entered annulling the decision of the board and ordering the board to direct the commissioner to issue the permit. The Court held that although the landowner was entitled to the permit at the time the board had rendered its decision, he nevertheless was not protected by a zoning freeze because no rights had vested.[6] DeJesus, like Caputo, had done nothing more than apply for a building permit before the zoning by-laws were amended. DeJesus had not even com *379 plied with all the prerequisites for issuance of that permit. See also Winniker Realty, Inc. v. Zoning Board of Appeals, 362 Mass. 869 (1972) (rescript).
Marshfield argues that Caputo is distinguishable because, unlike DeJesus, the applicant in that case had not obtained the “right to build” before the zoning change went into effect. In so arguing, Marshfield assumes that any “right to build” is the legal equivalent of a “vested right to build.” It is not. The “right to build” acknowledged by the Board in 1995 was, at most, an inchoate right, dependent upon issuance of a building permit after compliance with all the prerequisites for issuance of such a permit, including site plan approval.[7] That right to build, irrespective of what the Board today “feels,” created no more than an expectation of issuance.
[T]he fact that a landowner may be entitled to the issuance of a permit does not necessarily entitle him to exercise the rights granted by that permit in the face of subsequently adopted legislation. It is only if a permittee’s rights have become “vested” under the permit before the legislation becomes effective that the permittee may continue to exercise those rights . . . Hence, the question whether a landowner is entitled to have a permit issued . . . is a question substantially different from the question whether the permittee’s rights have vested . . .
Gramiger v. Pitkin, 794 P.2d 1045, 1048 (Colo. App. 1989), cert. denied, 1990 Colo. LEXIS 540 (refusal to issue foundation permit was not what prevented landowner from acquiring a vested right to build since he had not been in a position to apply for a building permit before the effective date of the zoning change). See Selectmen of Topsfield v. State Racing Comm’n, 324 Mass. 309, 314 (1949) (“The approval of the location at which a license to conduct horse racing meetings has never been granted did not convey any vested rights ... It did little more, if anything, than merely make the respondent eligible to apply for a license from the commission”). Marshfield cites no case that would support the proposition that the Board’s decision created vested rights entitling it to take advantage of the permit or nonplan zoning freeze in section 6.[8]
Marshfield’s argument, like the Board’s 1997 decision that a permit zoning freeze went into effect when its 1995 decision was appealed,[9] contradicts the plain meaning of G.L.c. 40A, §6. When the language of a statute is clear and unambiguous, it must be interpreted in accordance with the usual and natural meaning of the words. Conroy v. City of Boston, 392 Mass. 216, 219 (1984). Words are to be accorded their ordinary meaning and approved usage. Hashimi v. Kalil, 388 Mass. 607, 609 (1983). “It is the function of the court to construe a statute as it is written and an event or contingency for which no provision is made does not justify judicial legislation.” Prudential Insurance Co. of America v. City of Boston, 369 Mass. 542, 547 (1976). “[T]he court cannot read into a statute an intent that is not there expressed in plain words or by necessary implication.” Tilton v. City of Haverhill, 311 Mass. 572, 578 (1942).
Section six unambiguously delineates those events which trigger a nonplan zoning freeze. Issuance of a building permit is one such triggering event. An application for a building permit is not. Neither is an inchoate right to build. Not even site plan approval, by itself, entitles a landowner to a zoning freeze under G.L.c. 40A, §6. The filing of an appeal from a decision of a board of zoning appeals that a variance is not required in order to obtain a building permit also is not an event which the Legislature has determined should result in a zoning freeze. To treat the 1995 decision by the Board as equivalent to issuance of a building permit would satisfy neither the intent of §6 nor its plain meaning. At the stage that the Board rendered its decision, the Building Commissioner had no authority to issue the permit. A landowner who has not even complied with the prerequisites for issuance of a building permit should not be in a better position than other members of the public with the same inchoate right to build merely because he has obtained clarification that he does not need a variance to obtain a permit. Compare Alexander v. Building Inspector, 350 Mass. 370, 375-76 (1966).
Issuance of a special permit also triggers a permit freeze. A decision that a city’s by-laws contain no applicable height limitations, even if the “functional equivalent” of a special permit, which it is not,[10] is not an event that triggers a zoning freeze. Neither the Board nor this court is free to rewrite c. 40A, §6 to encompass analogous, but not legislatively enumerated, freeze-creating events. Thus, it is immaterial that, in order for a permit freeze to come into effect, an applicant would not have had to obtain a building permit and, therefore, site plan approval, if a special permit had been required and obtained. The radio tower was not a use that required a special permit, and no application for a special permit was ever made for the tower in question.
To the extent that Marshfield is arguing that the Board’s 1995 decision granted it “vested rights” under the common law that are independent of and survive or trump the enactment of c. 40A, §6, it fares no better. It is c. 40A, §6 which defines the circumstances under which rights become vested and which provides a landowner with “vested zoning protection.” Heritage Park Development Corp. v. Southbridge, 424 Mass. 71, 75 (1997). The Board “cannot act at the expense of a vested property right created by the Legislature,” id. at 76, and neither can it create a nonplan freeze where the Legislature has chosen not to do so. Cf. Derby Refining Co. v. Board of Aldermen, 407 Mass. 718, 722, n.9 (1990) (dammable storage license, when issued, “becomes a vested property right of the licensee,” but before the relevant statute had been amended in 1945, *380 such a license “did not vest as a property right upon issuance, but only upon its being exercised by the licensee”).
Even if the statute is not the exclusive source of “vested rights,”[11] the common law principle of “vested rights” is not broad enough to encompass the right to build upon due application for a building permit. Before the Legislature provided permit freeze protection in 1927, the common law was clear that the mere filing of an application gives rise to “no vested rights.” Spector v. Building Inspector, 250 Mass. 63, 71 (1924) (denial of building permit upheld where, before zoning change became effective, no permit had issued, and petitioner was not in position to demand permit as of right because of a failure to file plans as required by the building code).[12] Indeed, in Massachusetts, a common law vested right does not even come into being upon issuance of a building permit and commencement of work under that permit. “The petitioners have no special and peculiar immunity arising from the fact that [building] permits had been issued to them . . . Since the petitioners had only barely begun work pursuant to their permits, they had acquired no vested rights against a change in the by-law by the exercise of the law-making power." Brett v. Building Commissioner, 250 Mass. 73, 79-80 (1924).
Under the common law, in order for rights to vest, a permit must issue and “the permittee must take substantial steps to exercise those rights in reliance on the permit before the effective date of any new legislation that may affect those rights.” Gramiger v. Pitkin, supra, 794 P.2d at 1048.[13] See also Board of Supervisors v. Medical Structures, Inc., 192 S.E.2d 799, 801 (Va. 1972) (where special use permit has been issued, a bona fide site plan has been filed and diligently pursued, and considerable expense has been incurred in good faith before a change in zoning, permittee has a vested right to the land use for which the special permit was issued); Griffin v. County of Marin, 321 P.2d 148, 151, 157 Cal.App.2d 507, 513 (1st Dist. 1958) (building permit issued and substantially acted upon may not be revoked). In the case at bar, by contrast, when the first notice of public hearing on the proposed zoning changes was published, no building permit had issued; no site plan approval had been secured; no construction had begun; and no rights had vested.
After the Board’s 1995 decision, DeJesus had the opportunity to seek and obtain a building permit before the zoning by-laws were amended. He chose not to do so, creating the situation in which Marshfield now finds itself.
Where ... a landowner does not apply for a permit until the last day before the [plan] protection period expires, thereby making it impossible to secure the approvals necessary for the issuance of a permit before the expiration date, he finds himself in a position similar to that in which applicants before him found themselves ... In those cases, the mere filing of permit applications gave the plaintiff no vested rights, and the risk of zoning changes was on the applicants. The denials of the applications were controlled by the zoning ordinance in effect at the time the decisions on the applications were made.
Falcone v. Zoning Board of Appeals, 7 Mass.App.Ct. 710, 714 (1979). Long before Marshfield’s application was finally processed and the permit issued, it became unlawful to issue the permit by reason of the changes to the zoning ordinance.
The fact that, almost two months after the Board ruled that no variance was needed, DeJesus stipulated that he would not seek issuance of a building permit during the pendency of the appeal from the Board’s 1995 decision is not a fact that entitles Marshfield to the benefit of a zoning freeze. Nothing precluded DeJesus from seeking issuance of a building permit after the Board’s decision was rendered and before the stipulation was entered into. Furthermore, the court neither entered an injunction precluding DeJesus from applying for a building permit nor required, in any way, that DeJesus so stipulate. The stipulation itself was not entered as an order of the court, and the possibility of a stipulation was raised by the court only after DeJesus had represented that he had no intention of asking for a building permit until the appeal from the Board’s 1995 decision was resolved. By voluntarily agreeing to refrain from seeking issuance of a building permit, DeJesus assumed the risk of zoning changes. If DeJesus had declined to turn his oral and written representations into a stipulation, the motion for preliminary injunction still may have been denied for lack of probability of success on the merits or lack of irreparable harm because issuance of a permit, as opposed to actual construction of the tower, did not pose a risk of irreparable harm to the plaintiff. Instead of asking the court to fashion an order that would apply to construction only, leaving DeJesus free to obtain a building permit,[14] DeJesus simply volunteered not to seek issuance of a building permit. It would be utterly anomalous if a private party could, merely by offering not to seek a building permit, later compel a municipality to issue a permit which would allow him to construct a structure forbidden by the zoning ordinance in effect at time of issuance and, by so doing, vitiate the purpose for which the amended zoning by-law has been enacted.[15]
In sum, Marshfield has only itself to blame for failing to do what was needed to acquire the nonplan zoning freeze protection provided in G.L.c. 40A, §6. Once the Board ruled on March 9, 1995, that no variance was needed, DeJesus was not legally prevented from taking action to protect his rights. If Marshfield wanted DeJesus to acquire vested rights and protect itself against the risk of a zoning change without actually building the tower until the variance *381 issue had been fully adjudicated, DeJesus should have secured site plan approval and the issuance of the building permit and agreed to the entry of a preliminary injunction precluding construction under any building permit issued during the appeal from the Board’s 1995 decision. There was ample time in which DeJesus could have obtained issuance of the building permit prior to publication on January 16, 1996 of the first notice of public hearing on the by-law amendment. “Instead of doing these things whereby it would have obtained a ‘vested right’ ... it waited until after the amendatory ordinance was passed and became effective and then presented its [perfected application]”. Richmond Corp. v. Board of County Commissioners, 255 A.2d 398, 404 (Md. 1969) (emphasis in original).
The Board’s 1997 decision is erroneous as a matter of law. It exceeds the authority of the Board because G.L.c. 40A, §6 does not permit the Board, in these circumstances, to deem that a zoning freeze went into effect when its 1995 decision was appealed. A decision which exceeds the Board’s authority should be annulled. G.L.c. 40A, §17.
ORDER
For the foregoing reasons, the court hereby ORDERS that:
(1) the motion of Rosalie Franks for summary judgment be, and hereby is, ALLOWED;
(2) the February 6,1997 decision of the City of Taunton’s Zoning Board of Appeals be, and hereby is, ANNULLED;
(3) the cross motion of Alfred DiRico, individually and as Trustee of Marshfield Properties Trust, for summary judgment be, and hereby is, DENIED; and
(4) counsel shall appear for a status conference on September 22, 1997, at 2:00 P.M., for the purpose of discussing what further relief, if any, the plaintiff seeks.

 Article 15, §4 of the Taunton Zoning Ordinance provides, as follows:
Notwithstanding anything contained in this ordinance to the contrary, no building permit shall be issued for, and no person shall undertake, any use or improvement subject to this section unless an application for site plan review and approval has been prepared for the proposed development in accordance with the requirements of this section, and unless such application has been approved by the Site Plan Review Committee.

 No injunctive relief was sought in the complaint. This court has taken judicial notice of pleadings in the 1995 Bristol County Superior Court action, Franks v. Levesque, Docket No. C95-00556, as well as a transcript of the preliminary injunction hearing in that action.

 The tower described in the site plan approval package approved by the Taunton Municipal Council is substantially the same as that originally proposed in December of 1994 when the application for a building permit was first filed. In the interim, however, an easement was obtained to place a guy wire on an adjoining piece of property and the site for the base of the tower was placed approximately one hundred feet within the site in order to accommodate safety concerns of city officials.

 Not all construction must await the issuance of a building permit. See generally R. Davis & B. Gordon, “Zoning Freezes,” in 1 Massachusetts Zoning Manual (Healy & Richards eds. 1995) §7.05.

 When Caputo was decided, the relevant statute also provided freeze protection only for permits issued before notice of the hearing on the amendment. Id. at §7.03.

 A municipality may, however, be estopped from applying changes in the zoning laws if the failure to obtain the permit is solely the result of inaction or wrongful delay on the part of local zoning enforcement officials. Cf. Green v. Board of Appeal of Norwood, 2 Mass.App.Ct. 393, 396 (1984). The present case raises no such issue. The mere fact that the building commissioner mistakenly believed that a variance was needed does not constitute wrongful delay. Cf. Caputo v. Board of Appeals, 330 Mass. 107 (1953). Furthermore, since no site plan approval had been secured by DeJesus prior to the first notice of a hearing on the proposed zoning changes, the Building Commissioner could not have issued the permit.

 The contention that Marshfield was entitled to a building permit because, when the Board ruled in 1995, the Building Commissioner would have been compelled to issue one has no merit. At that stage, issuance was far from ministerial. The Building Commissioner must review an application to insure “that the proposed work conforms to the requirements of 780 C.M.R. and all laws and ordinances applicable thereto.” 780 C.M.R. § 111.1. Site plan procedures “are a means of collecting the comments of various municipal authorities—e.g. highway, fire, police, health, building, conservation ...” Bowen v. Board of Appeals, 36 Mass.App.Ct. 954, 955 (1994) (rescript). Marshfield’s application for site plan approval on October 16, 1996 and the Building Commissioner’s ruling on November 21, 1996 that Marshfield was entitled to a building permit only upon completion of the site plan review process is inconsistent with Marshfield’s present contention that it already had a vested right.

 iven the facts of this case, it is not necessary to decide whether §6 ought to be construed to allow a freeze to take effect when nothing remains but the ministerial act of physically issuing the permit. See note 7, supra. Where a landowner has incurred substantial expenses or change of position in good faith reliance on the probability of a building permit’s issuance, which is not the case here, and where all the prerequisites to issuance of the permit have been satisfied, the permit has been approved, and nothing remains but physical issuance, which is also not the case here, a vested right may arise. E.g., Mattson v. City of Chicago, 411 N.E.2d 1002, 89 Ill. App.3d 378 (1980). In Mattson, every division of the Department of Buildings had approved the building plans, and all processing had been completed except for the actual physical issuance of the permit. The plaintiff had demolished a single-family residence on the property pursuant to a demolition permit, and both the approval of the application for the building permit and demolition occurred prior to introduction of the zoning amendment. On those very different facts, the court held that a vested right arose where the plaintiff had expended substantial funds and issuance of the permit was purely ministerial.

 By ruling that the freeze went into effect when its decision was appealed, the Board appears to have confused when a permit nonplan freeze springs into being with when a plan freeze period is tolled. G.L.c. 40A, §6, ¶8 specifically provides that “[i]n the event that any lot shown on a plan endorsed by the planning board is the subject matter of any appeal or litigation, the exemptive provisions of this section shall be extended for a period equal to that from the date of filing of said appeal or the commencement of litigation, whichever is earlier, to the date of final disposition thereof, provided final *382 adjudication is in favor of the owner of said lot.” In addition, the seventh paragraph of section six provides that an “appeal [from a decision disapproving a subdivision plan] shall stay, pending an order or decree of a court of final jurisdiction, the applicability to land shown on said plan of the provisions of any zoning ordinance or by-law which became effective after the date of submission of the plan first submitted.”

 A municipality can provide that only specific types of use shall be permitted in specified districts upon the issuance of a special permit. G.L.c. 40A, §9. If the use at issue is one which, under the Taunton Zoning Ordinance, requires issuance of a special permit, such permit must be obtained before a building permit can issue.

 A statute may not, of course, eliminate property rights without compensation. By granting a freeze upon simple issuance of a building permit, the Zoning Act is far more generous than what is required as a matter of constitutional law.

 See also White Plains Housing Authority v. Zoning Board of Appeals, 103 N.Y.S.2d 549, 550 (1951) (where properly owner applied for a permit and hearing was held, but zoning change occurred before permit granted, property owner has acquired no vested right).

 See also Altland v. Sprenkle, 427 A.2d 275, 277 (Pa. Comwlth. 1981) (“a vested right to build in futuro a structure which violates a zoning ordinance can only be acquired by first receiving a permit and thereafter expending substantial sums thereon”).

 G.L.c. 40A, §6, ¶2 provides that “[a] zoning ordinance or by-law shall provide that construction or operation under a building or special permit shall conform to any subsequent amendment of the ordinance or by-law unless the use or construction is commenced within a period of not more than six months after the issuance of the permit...” But a court order prohibiting work authorized by a building permit suspends the requirement that such work begin within six months of issuance. 780 C.M.R. §111.7. Thus, a court order prohibiting construction would toll the period of time in which the permit is required by §6 to specify that work commence in order to maintain the permit freeze in effect. Cf. Belfer v. Building Commissioner, 363 Mass. 439, 444 (1973) (period during which variance must be exercised tolled during appeal from decision of board granting the variance); Woods v. Newton, 351 Mass. 98, 104 (1966) (holder of building permit legally unable to use it because of outstanding injunction should not be prejudiced by judicially imposed delay); M. DeMatteo Construction Co. v. Board of Appeals, 3 Mass.App.Ct. 446, 458 (1975) (once plan freeze under §6 goes into effect, six-year plan freeze period stops running if building commissioner orders plaintiff to cease operations).

 Even if DeJesus had been enjoined from obtaining a building permit, he would not have been exempted from zoning ordinances noticed and enacted during the pendency of the appeal. Chapter 40A, §6 makes no provision for a permit freeze, following application for a building permit, during litigation concerning the need for a variance. G.L.c. 40A, §6, ¶5, which is not applicable to Marshfield, provides that after the right to an eight or seven year plan freeze has vested by virtue of plan approval, the length of the freeze “shall be extended by a period equal to the time which a city or town imposes or has imposed on it by a state, a federal agency or a court, a moratorium on construction, the issuance of permits or utility construction.”