The VILLA AT GREELEY, INC., Plaintiff–Appellee,

v.

Marvin HOPPER, Intervenor–Appellant,

and

Board of Commissioners, Weld County, Colorado, Defendant–Appellee.

No. 95CA1655.

Colorado Court of Appeals, Div. I.

April 11, 1996.

Otten, Johnson, Robinson, Neff & Rago-netti, P.C., J. Thomas MacDonald, William H. Brierly, Denver, Houtchens, Daniel & Greenfield, Kim Robert Houtchens, Greeley, for Plaintiff–Appellee.

Hayes, Phillips, Maloney & Haddock, John E. Hayes, Herbert C. Phillips, Denver, for Intervenor–Appellant.

Bruce T. Barker, County Attorney, Lee D. Morrison, Assistant County Attorney, Greeley, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

Marvin Hopper, intervenor, appeals from a judgment of the trial court concerning interpretation of a vested property right of plaintiff, The Villa at Greeley, Inc. (developer), in a site specific development plan (PUD plan) approved by defendant, the Board of County Commissioners of Weld County (board). We reverse and remand.

In December 1993, the board approved a PUD plan submitted by developer for construction of a pre-parole facility in Weld County. In January 1995, intervenor and others submitted petitions to the county calling for a referendum to give the electorate special authority to review siting decisions over various incarceration facilities. In February 1995, developer sought and was granted a ruling construing its vested property right in the PUD plan development pursuant to the Vested Property Rights Act (the Act), §§ 24–68–101, et seq., C.R.S. (1988 Repl.Vol. 10B).

The trial court ruled that developer had a vested property right which "precludes any zoning or land use action by a local government or pursuant to any subsequent initiated measure which would alter, impair, prevent, diminish, or otherwise delay" developer's development or use of its property as set forth in the PUD plan.

On June 13, the voters of Weld County amended the Home Rule Charter of Weld County through a referendum sponsored by intervenor and others (charter amendment). As applicable here, the charter amendment precluded issuance of a certificate of occupancy for pre-parole facilities until the location and siting of the facility has been approved by a majority vote of the county electorate.

Following the referendum, developer sought an additional ruling interpreting the effect of the amendment on developer's vested right. On June 23, the trial court ruled that, because the charter amendment was enacted subsequent to the board's approval of developer's PUD plan, it was not applicable to developer's vested property right. Further, the court found that any application of the charter amendment to developer's vested property right would violate Colo. Const. art. II, § 11, which precludes retrospective legislation. Accordingly, the court concluded that an affirmative vote of Weld County electors was not a prerequisite to a certificate of occupancy for developer's pre-parole facility.

The same day, intervenor filed a motion to intervene and objected to the court's interpretation of the Act as well as its ruling that the charter amendment did not apply to developer's project. Thereafter, the court granted the motion to intervene, but denied intervenor's objection and affirmed its prior rulings. This appeal followed.

## I.

Intervenor contends that the trial court erred in interpreting the Vested Property Rights Act to preclude an initiated measure from affecting developer's vested right. We agree.

The Act, by its terms, creates a vested property right in a landowner when a local government approves a PUD plan. *See* § 24–68–103, C.R.S. (1988 Repl.Vol. 10B). Sections 24–68–105(1) and 24–68–105(2), C.R.S. (1988 Repl.Vol. 10B), provide, in pertinent part, that:

A vested property right, once established as provided for in this article, precludes any zoning or land use action by a local government or pursuant to an initiated measure which would alter, impair, prevent, diminish, or otherwise delay the development or use of the property as set forth in a site specific development plan, except:

(a) With the consent of the affected landowner;

(b) Upon the discovery of natural or manmade hazards ... which hazards could not reasonably have been discovered at the time of site specific development plan approval ... or

(c) To the extent that the affected landowner receives just compensation for all costs, expenses, and liabilities incurred by the landowner ... after approval by the governmental entity, together with interest thereon at the legal rate until paid....

(2) The establishment of a vested property right shall not preclude the application of ordinances or regulations which are general in nature and are applicable to all property subject to land use regulation by a local government....

■ In enacting a statute, it is presumed that the General Assembly intends that the entire statute be given effect. *See* § 2–4–201(1)(b), C.R.S. (1980 Repl.Vol. 1B). Each clause and sentence must be presumed to have a purpose and use which cannot be ignored, *see People v. Terry,* 791 P.2d 374 (Colo.1990), and a construction that would render any provision unnecessary or insignificant should be avoided. *Karlin v. Conard,* 876 P.2d 64 (Colo.App.1993).

■ The trial court determined that, under the Act, the limitation on land use actions set forth in the statute is subject to "conditions and standards" of the PUD agreement,

"generally applicable ordinances or regulations in effect as of the date [developer's right vested]," and "correction of [certain] natural or man-made hazards." *See* §§ 24–68–105(1)(a), 24–68–105(1)(b) and 24–68–105(2), C.R.S. (1988 Repl.Vol. 10B). Without explanation, the trial court omitted reference to § 24–68–105(1)(c), C.R.S. (1988 Repl.Vol. 10B), which also provides an exception to the protection of statutorily vested property rights to the extent that the affected landowner receives just compensation for certain costs incurred subsequent to the receipt of plan approval from the local government.

However, the plain language of the statute provides that all of these exceptions apply to all rights vested under the statute. Thus, applying the applicable principles of statutory construction, we perceive no basis for the trial court's conclusion that § 24–68–105(1)(c) is inapplicable to the vested right in a project such as the one here.

## II.

Developer contends that even if, by its terms, § 24–68–105(1)(c) otherwise qualifies the protection of statutorily vested rights, here, the charter amendment is inapplicable to its plan for a pre-parole facility development. Developer posits three reasons for this conclusion: (1) if applicable, the charter amendment would be an unconstitutional taking of property prior to compensation; (2) the amendment violates the constitutional restraint on retrospective legislation; and (3) the amendment is an impermissible delegation of administrative authority. We are not persuaded.

## A.

First, developer argues that the trial court was correct in ruling the charter amendment inapplicable to developer's project because it fails specifically to authorize compensation. Developer bases its argument on two premises: (1) that the charter amendment, if applicable, would delay or impair development of the PUD plan, regardless whether the eventual mandated vote approves or rejects the facility location; and (2) that Colo. Const. art. II, § 15 requires that compensation must be paid before the proprietary rights of an owner are divested. Because the charter amendment did not specifically provide for compensation, yet must be interpreted, if possible, to comply with constitutional requirements, developer contends that the amendment must be interpreted to exclude its project.

■ However, even if we accept developer's contention that passage of the charter amendment itself has delayed development of the PUD plan, we agree with intervenor that the charter amendment is not *per se* unconstitutional if applied to developer's PUD plan.

Colo. Const. art II, § 15 provides, in the event of a taking of private property for public use, that:

> [C]ompensation shall be ascertained ... and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested....

This provision does not, however, preclude all disturbances before compensation is paid.

■ While divestment of proprietary rights may be unconstitutional prior to compensation, the mere suspension of those rights is not precluded. *McClain v. People*, 9 Colo. 190, 11 P. 85 (1886); *cf. Swift v. Smith*, 119 Colo. 126, 201 P.2d 609 (1948) (when statute allows occupancy and use of property—a physical taking—before compensation, the court must make a finding of necessity before the order for possession is entered).

Here, there is no claim of a physical taking, and passage of the charter amendment has not divested developer of its right to develop under the PUD plan. Instead, the amendment suspends the unqualified fulfillment of that right pending an affirmative vote of the county electorate.

## B.

Next, developer contends that any attempt to apply the charter amendment to its vested property right would violate the prohibition against retrospective legislation set out in Colo. Const. art. II, § 11.

### 1.

First, developer argues that the charter amendment is retrospective as to its statutorily vested right. We disagree.

■ A law is retrospective in its operation if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already [past]." *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982). But, all retroactive application of a statute is not unconstitutional simply because it operates on facts which occurred before its adoption. *See, e.g., People v. D.K.B.*, 843 P.2d 1326 (Colo.1993).

■ For legislation to be given retroactive effect without being unconstitutional, it must be clearly the intent of the General Assembly to do so. That intent need not, however, be explicitly expressed in the legislation. *See Ficarra v. Department of Regulatory Agencies*, 849 P.2d 6 (Colo.1993) (distinguishing between retrospective and retroactive operation of a statute).

■ Here, the Act only creates a vested right subject to divestment—a vested right to develop property according to the terms and conditions of an approved PUD plan, but only to the extent that those conditions are not changed through exceptions authorized in §§ 24–68–105(1) and 24–68–105(2). Assuming compensation will be paid, we consider developer's statutory vested right as being only a right to complete development and occupy the pre-parole facility if its location and siting are approved by the county electorate. Thus, the charter amendment does not retrospectively impair a vested right because enactment of a law such as the charter amendment was both anticipated and sanctioned in the statute.

The charter amendment will, however, indirectly impose a new obligation on developer with respect to a transaction already past. Specifically, the charter amendment requires developer to secure an affirmative vote of the electorate on the location of its pre-parole facility, a matter already approved in the PUD plan. To the extent that intervenor, in response, argues that the charter amendment only affects the occupancy certificate, which has not as yet been issued, or that the new requirement is technically imposed upon the board rather than on developer, we view these distinctions as meaningless.

However, here again, the charter amendment imposes only the type of condition that the Act anticipates may be imposed by either the local government or pursuant to an initiated measure. And, the General Assembly undoubtedly anticipated imposition of new conditions upon completed transactions, *e.g.*, an approved PUD plan, or the exceptions of § 24–68–105 would be meaningless. Consequently, the charter amendment does not violate the prohibition against retrospective legislation with regard to a statutorily vested right.

### 2.

Further, to the extent that developer argues that the charter amendment is retrospective in operation as to any other vested right in developer's facility, specifically, a common law right to development, we also disagree.

The Act was promulgated, in part, to reduce the uncertainties inherent in the protection of rights through the common law doctrine of vested rights or equitable estoppel. *See* § 24–68–101, C.R.S. (1982 Repl.Vol. 16A). However, the General Assembly's creation of the statutory vested right did not supplant or supersede the common law right. *See* § 24–68–106(3), C.R.S. (1982 Repl.Vol. 16A) ("Nothing in this article shall preclude judicial determination, based on common law principles, that a vested property right exists in a particular case or that a compensable taking has occurred.").

■ There is no fixed formula for determining whether or not a common law right has vested. *See Ficarra v. Department of Regulatory Agencies, supra*, 849 P.2d at 17 (the term vested right "sums up a judicial determination that the facts of the case render it inequitable that the State impede the individual from taking certain action"); *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365 (Colo.1982) (determination depends on factual considerations such as whether a

developer's reliance was reasonable, made in good faith, and more than preparatory work; absent reasonable reliance, water and sewer tap permits do not provide basis for common law vested right).

The general rule, however, provides that a common law right to develop does not vest until the party has taken substantial steps in reliance on a building permit. *See Crawford v. McLaughlin,* 172 Colo. 366, 473 P.2d 725 (1970) (right may vest based on substantial expenditure in reliance on initial permit despite need for additional permits); *Cline v. Boulder,* 168 Colo. 112, 450 P.2d 335 (1969) (absent reliance, possession of a building permit does not vest a property right in the owner); *City and County of Denver v. Stackhouse,* 135 Colo. 289, 310 P.2d 296 (1957) (reliance on invalid building permit sufficient to invoke doctrine of estoppel); *see also Aspen v. Marshall,* 912 P.2d 56 (Colo.1996) (building regulations in effect at time of submission of complete permit application are applicable to landowner). *But see Gramiger v. County of Pitkin,* 794 P.2d 1045 (Colo.App. 1989) (common law right may vest if circumstances excuse a party from the normal requirement of taking substantial steps in reliance upon a final building permit).

■ Here, the record supports the intervenor's contention that no permits have been issued, and thus, as a matter of law, no common law right to development has vested. Consequently, we need not determine whether the charter amendment was retrospective in operation to a common law vested right.

### C.

Developer also contends that the charter amendment is invalid because it is an impermissible delegation of the county's administrative authority in violation of due process. Specifically, developer argues that, as applied, the charter amendment is not reasonably related to promoting a legitimate public purpose because, contrary to the provisions of § 30–28–205(3), C.R.S. (1986 Repl.Vol. 12A), it would allow the electorate to deny a certificate of occupancy for reasons unrelated to compliance with the building code. We disagree.

The charter amendment provides that a certificate of occupancy may not be issued by:

Weld County, nor any department, agent or employee thereof [for a pre-parole facility] unless and until the location and siting [thereof] has been approved by a majority of the registered electors of Weld County voting on such question at a regular or special election.

■ By its terms, the charter amendment adds a condition to issuance of a certificate of occupancy. It neither usurps the ministerial function of issuing the certificate of occupancy when all the conditions have been met, nor changes the purpose for granting the certificate.

Instead, as developer recognizes in its brief, approval of the PUD plan constituted a rezoning, legislative in nature, which was subject to voter review by referendum. *See generally City of Fort Collins v. Dooney,* 178 Colo. 25, 496 P.2d 316 (1972) (due process not violated in rezoning by referendum).

While the voters did not challenge the board decision in a timely referendum, the charter amendment performs the same function. Because the initiative was passed after the review period expired, it merely allowed developer's property right in development of the PUD to vest. Consequently, although just compensation must be paid by the county to accomplish that which it could have accomplished through a timely review referendum, nonetheless, the initiative action affects the board's legislative action, not its ministerial function.

Furthermore, because the charter amendment affects a zoning measure, any number of legitimate purposes could be served by an electorate's decision to prevent siting of a pre-parole facility in a particular location.

### III.

Because it may arise on remand, we also address intervenor's contention that the trial court erred in failing to apply the pending ordinance doctrine to require a vote of the electorate prior to occupation of the pre-parole facility. We perceive no error.

■ The pending ordinance doctrine allows local governments to apply ordinances that have yet to be officially enacted, but that are legally "pending" on the date of a permit application. *See National Advertising Co. v. City & County of Denver,* 912 F.2d 405 (10th Cir.1990). For an ordinance to be "pending," the proposed change need not be before the governing body, but the appropriate department of the city must be actively pursuing it. *See* 8 E. McQuillin, *Municipal Corporations* § 25.155 (3d ed.1983). The doctrine may only be applied if the municipality has not unreasonably or arbitrarily refused or delayed issuance of a permit. *See Crittenden v. Hasser,* 41 Colo.App. 235, 585 P.2d 928 (1978).

■ Here, it is undisputed that in November 1994, after the board had already approved of the PUD plan, intervenor notified the Weld County Clerk of his intent to submit the charter amendment for a vote. Further, Weld County adopted the charter amendment in June 1995 prior to developer's application for either building permits or for a certificate of occupancy.

Consequently, the amendment was not pending while the PUD plan building permits, or a certificate of occupancy were being considered. Thus, the trial court did not err is failing to consider the pending ordinance doctrine in its rulings.

## IV.

And, finally, on remand, the extent to which developer should be awarded compensation for the charter amendment's effect on its vested right must be determined.

■ Unlike the eminent domain statute, the Act does not specifically state when just compensation must be paid, provide a mechanism for determining compensation, or provide for the posting of security during assessment proceedings. *Compare* the Act *with* §§ 38–1–101, et seq. (1982 Repl.Vol. 16A). Like inverse condemnation actions, however, the Act is based on the takings clause of Colo. Const. art II, § 15, and consequently, a claim under the Act should be determined, to the extent applicable, as if it were an eminent domain action. *See Linnebur v. Public Service Co.,* 716 P.2d 1120 (Colo.1986); *Williams v. City of Central,* 907 P.2d 701 (Colo.App. 1995).

■ Under the eminent domain statute, the trial court has authority to decide all questions and issues except for the amount of compensation, unless all parties stipulate that compensation may also be decided by the court. Section 38–1–101, C.R.S. (1995 Cum. Supp.). Therefore, while the trial court erred in finding that the charter amendment was inapplicable to the pre-parole facility development, it also erred in failing to make a finding in its June 1995 order on whether the charter amendment had already affected the PUD plan development, and the extent of this effect such that the amount of compensation to be awarded for that impact can be determined in accord with § 38–1–101, C.R.S. (1995 Cum.Supp.). *See* § 24–68–105(1)(c) (land use action precluded except *"[t]o the extent* that the affected landowner receives just compensation for all costs, expenses, [etc.]" (emphasis added)).

In addition, on remand, the trial court must determine the approximate amount that will be due to developer, in accord with the Act, should the Weld County electorate disapprove the pre-parole facility location. *See* § 24–68–105(1)(c) (specifying the costs which are to be compensated and specifically precluding compensation for any diminution in value of the property). This amount shall be deposited with the court to be used once the amount of just compensation has been finally determined or as further damages suffered if the pre-parole facility location is not ultimately approved. *See Linnebur v. Public Service Co., supra;* § 38–1–105, C.R.S. (1982 Repl.Vol. 16A).

Accordingly, the judgment is reversed and the cause is remanded to the trial court for further proceedings in accord with this opinion.

RULAND and TURSI*, JJ., concur.