**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HALLCO ENVIRONMENTAL INC., an
Oklahoma corporation; HILLTOP
ENVIRONMENTAL MANAGEMENT
COMPANY, an Oklahoma corporation,

  Plaintiffs-Appellants,

  v.

COMANCHE COUNTY BOARD OF
COUNTY COMMISSIONERS; CITY OF
LAWTON, OKLAHOMA; CLAUDE
MANSEL; FRANK WALKER; GARY L.
JONES; DUTY ROWE; former or current
members of Board of County Commissioners
of the County of Comanche; JAMES EDDIE
PHILLIPS; THOMAS D. HAWTHORNE;
OKLAHOMA DEPARTMENT OF
ENVIRONMENTAL QUALITY,

  Defendants-Appellees.

No. 97-6083
(W. Dist. of Oklahoma)
(D.C. No. 95-CV-885)

**ORDER and JUDGMENT**[*]

Before **BRORBY**, **BARRETT**, and **LUCERO**, Circuit Judges.

Hallco Environmental, Inc. (Hallco), and Hilltop Environmental Management Company

---

[*]     This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

(Hilltop) (collectively "Hallco") appeal the district court's: grant of summary judgment in favor of the Board of County Commissioners of the County of Comanche, Oklahoma (the Board), the City of Lawton, Oklahoma (Lawton), Claude Mansel, Frank Walker, Gary Jones and Duty Rowe, former and current members of the Board (collectively "the Commissioners"), James Eddie Phillips (Phillips), and Thomas D. Hawthorne (Hawthorne) on their antitrust claim; dismissal, without prejudice, of the Fifth Amendment takings, procedural due process, substantive due process, equal protection, commerce clause, and contract clause claims as premature; declination to entertain supplemental jurisdiction over the remaining state law claims.

Facts

In 1989, Hilltop assigned its leasehold rights to property located in Comanche County, Oklahoma, to Hallco for the construction and operation of a nonhazardous industrial solid waste landfill. On March 19, 1990, Hallco filed an application with the Oklahoma Department of Environmental Quality (DEQ), formerly the Oklahoma State Department of Health, to construct and operate such a landfill. The Board, Lawton, Phillips and Hawthorne opposed Hallco's landfill proposal and submitted objections to DEQ. On October 31, 1991, DEQ issued Hallco a permit to construct, operate and close a nonhazardous industrial solid waste landfill at a designated site in Comanche County.

On December 19, 1991, the Board adopted a moratorium on the opening of all new landfills in the county for two years or until it developed comprehensive landfill regulations pursuant to the Oklahoma Solid Waste Management Act, Okla. Stat. tit. 27A, § 2-10-202(B), which authorizes local governments to establish additional regulations on landfills in their area. On January 24, 1992, Hallco and George Stuever, a principal shareholder of Hilltop, filed suit in the state District Court

of Comanche County seeking a declaration that the moratorium violated their civil rights and constituted a compensable taking. On April 24, 1992, after Hallco attempted to begin construction on the landfill, the Board filed a petition for a temporary restraining order and injunction. On May 1, 1992, the state district court issued a temporary injunction enforcing the moratorium against Hallco. Hallco and Stuever appealed; however, the Oklahoma Supreme Court dismissed their appeal as moot because, by the time the appeal reached the Court, the moratorium had been rescinded. State ex rel. Schulte v. Hallco Envtl. Inc., 886 P.2d 994 (Okla. 1994).

On June 15, 1992, the Board adopted the Comanche County Rural Solid Waste Management Regulations (the regulations). Under the regulations, a party seeking to operate a landfill must apply to the Board for a county permit; there is a non-refundable application fee of $90,000 plus any additional costs incurred in processing the application; all roads determined by the Board to be in need of improvements must be improved at the applicant's expense before landfill construction may begin; a $4.00 per ton tipping fee is added to each ton received at the landfill; a majority vote at a special county election is needed to approve the landfill at an additional cost of $24,000; the operator must maintain a $10,000,000 liability policy; and there are specific location restrictions, such as, the landfill cannot be located within one and one-half miles of a dwelling. *See* App. of Aplts., Vol. V, Doc. 46.

On June 15, 1995, Hallco initiated this action alleging its rights were violated by the enactment of the regulations. On November 4, 1995, Hallco filed its Second Amended Complaint alleging: (1) the Board, the Commissioners, Lawton, Phillips and Hawthorne violated federal antitrust laws; (2) the Board committed a taking of its property without just compensation by enacting the regulations; (3) the Board denied it procedural due process; (4) the Board denied it

substantive due process; (5) the Board denied it equal protection; (6) the Board placed an unreasonable burden on interstate commerce; (7) the Board impaired its obligation of contract; (8) the Board, the Commissioners, Lawton, Phillips and Hawthorne violated 42 U.S.C. § 1983; (9) inverse condemnation against the Board; (10) conspiracy between the Board, the Commissioners, Lawton, Phillips and Hawthorne to unlawfully prevent the landfill; (11) the Board, the Commissioners, Lawton, Phillips and Hawthorne tortiously interfered with business relationships/contracts; (12) Oklahoma state law preempted the Board's regulations; and (13) DEQ unlawfully enforced the earthquake epicenter restriction, Okla. Stat. tit. 27A § 2-10-501(D), to arbitrarily revoke its permit.

On January 30, 1997, the district court granted summary judgment, based on various immunity grounds, in favor of the Board, the Commissioners, Lawton, Phillips and Hawthorne on Hallco's antitrust claim. The district court then dismissed, without prejudice, Hallco's federal claims as premature and declined supplemental jurisdiction over Hallco's state law claims.

On appeal, Hallco contends that the district court erred in: (1) granting summary judgment in favor of the Board, the Commissioners, Lawton, Phillips and Hawthorne on its antitrust claim; (2) dismissing its federal claims; and (3) declining supplemental jurisdiction over its state law claims.

We review summary judgment orders *de novo*. Oberndorf v. City & County of Denver, 900 F.2d 1434, 1437 (10th Cir.), *cert. denied*, 498 U.S. 845 (1990). "We review the record in the light most favorable to the non-moving party to determine if a genuine issue of material fact was in dispute; if not, we must determine if the substantive law was correctly applied." *Id*.

Discussion

I.  Antitrust Claims

Hallco contends that the district court erred in granting summary judgment in favor of the Board, the Commissioners, Lawton, Phillips and Hawthorne on its antitrust claim.  Hallco asserts that: (1) the Board is not entitled to the same presumption of state action immunity as agencies and officials of the State of Oklahoma; (2) the Commissioners are not immune under the official capacity exception of the Local Government Antitrust Act (LGAA), 15 U.S.C. § 35(a), and they waived immunity under the Noerr-Pennington doctrine; (3) Lawton does not qualify for state action immunity;[1] and (4) Phillips and Hawthorne are not immune from antitrust liability under the Noerr-Pennington doctrine.

The district court granted the motions for summary judgment filed by the Board, the Commissioners, Lawton, Phillips and Hawthorne on Hallco's antitrust claims, finding that: (1) the Board was "clearly a political subdivision of the state of Oklahoma" and, as such, was entitled to absolute immunity from antitrust claims for state actions, App. of Aplts, Vol. IV, Doc. 31 at 9; (2) the Commissioners were shielded from money damages under the LGAA by acting within their official capacities and Hallco did not seek injunctive or declaratory relief against the Commissioners, *id*. at 9-10; (3) Lawton was entitled to state action immunity on Hallco's prayer for injunctive and declaratory relief, *id*. at 11; and (4) Phillips and Hawthorne were immune from suit under the Noerr-Pennington doctrine, *id*. at 11-12.

A.  State Action Immunity

State action immunity "exempts qualifying state and local government regulation from

---

[1]     On appeal, Hallco does not challenge the district court's conclusion that Lawton was entitled to immunity from monetary damages under the LGAA.  *See* Brief In Chief of Aplts. at 19-20; App. of Aplts., Vol. IV, Doc. 31 at 10.

federal antitrust, even if the regulation at issue compels an otherwise clear violation of the federal antitrust laws." Zimomra v. Alamo Rent-A-Car, Inc. , 111 F.3d 1495, 1496 (10th Cir.) (internal quotations omitted), *cert. denied*, ___ U.S. ___ (1997). To obtain exemption, local governments "must demonstrate that their anticompetitive activities were authorized by the state 'pursuant to a state policy to displace competition with regulation or monopoly public service.'" Oberndorf, 900 F.2d at 1437-38 (quoting City of Lafayette, La. v. Louisiana Power & Light Co., 435 U.S. 389, 413 (1978)). The local government "must show that it acted in accordance with a 'clearly articulated and affirmatively expressed . . . state policy.'" *Id*. at 1438 (quoting City of Lafayette, 435 U.S. at 410). *See* Zimomra, 111 F.3d at 1499. "'A state policy is considered clearly articulated and affirmatively expressed if the statutory provision empowering the municipality's action plainly shows that the legislature contemplated the kind of action complained of.'" *Id*. (quoting Town of Hallie v. City of Eau Claire, 471 U.S. 34, 44 (1985) (internal quotation omitted)). "'It is enough [for state policy purposes]. . . if suppression of competition is the "foreseeable result" of what the statute authorizes. . . .'" Martin v. Memorial Hosp. at Gulfport, 86 F.3d 1391, 1400 (5th Cir. 1996) (quoting City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 372-373 (1991)).

First, the district court found that the Board was "clearly a political subdivision of the state of Oklahoma" and as such was entitled to absolute immunity from antitrust claims in adopting the regulations. (App. of Aplts, Vol. IV, Doc. 31 at 9.) We agree.

The Oklahoma Solid Waste Management Act provides that "[a]ny local governing body may by ordinance or resolution adopt standards for the location, design, construction, and maintenance of solid waste disposal sites and facilities more restrictive than those promulgated by the [Environmental Quality] Board." Okla. Stat. tit. 27A, § 2-10-202(B). This statute gives the Board,

as the local governing body for Comanche County, the power to adopt regulations regarding solid waste disposal sites and facilities within the county, including the non-hazardous industrial solid waste facility proposed by Hallco. Therefore, the Board was entitled to state action immunity in the adoption of the regulations pursuant to this statute.[2] *See* Zimomra, 111 F.3d at 1503 (defendants entitled to state action immunity because state statute authorized their actions).

Second, the district court found that Lawton was entitled to state action immunity on Hallco's prayer for injunctive and declaratory relief because "state law allows a municipality to engage in the business of garbage reduction plants and authorizes the counties to regulate solid waste landfill sites." (App. of Aplts, Vol. IV, Doc. 31 at 11.) We disagree.

Lawton is not protected under the doctrine of state action immunity because it did not take any state action in this case. The state action was the adoption of the challenged regulations done by the Board, not Lawton. Furthermore, the fact that state law allows a city to "engage in the business of garbage reduction plants" has no effect on its right to regulate landfill sites, much less regulate landfill sites outside its municipal boundaries. Therefore, Lawton is not entitled to state action immunity on Hallco's prayer for injunctive and declaratory relief. However, Hallco's prayer for injunctive and declaratory relief against Lawton fails for lack of a remedy. Lawton did not impose the regulations; accordingly, Hallco cannot obtain injunctive or declaratory relief from

---

[2]     In its Brief In Chief, Hallco states that the "enactment of the Regulations is not the act that violated the antitrust laws. The wrongful act is the improper exclusion of Hallco from the market and monopolization of the landfill industry." (Brief In Chief of Aplts. at 32.) Although perhaps an artful attempt to avoid state action immunity, Hallco's reasoning is erroneous. The only action taken by the Board that would result in the "exclusion of Hallco from the market and monopolization of the landfill industry," as Hallco submits, was the adoption of the regulations. Therefore, it is the adoption of the regulations that is the allegedly wrongful or anticompetitive act.

Lawton.

## B. Local Government Antitrust Act

Hallco contends that the Commissioners are not immune under the official capacity exception of the LGAA, 15 U.S.C. § 35(a), because they (a) acted unconstitutionally in adopting the regulations and (b) were not acting in their official capacities and, as such, are not entitled to immunity for their actions.[3]

The district court determined that the Commissioners were shielded from money damages under the LGAA for acting within their official capacities. (App. of Aplts, Vol. IV, Doc. 31 at 9-10.) The court found that Hallco failed to present evidence to support its contention that the Commissioners were not acting within their official capacities. *Id.* at 10.

The LGAA provides, "No damages, interest on damages, costs, or attorney's fees may be recovered [for antitrust violations] from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). *See* Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1477 (1990) (discussing LGAA). A county is clearly a local government within the meaning of the LGAA, *see* 15 U.S.C. § 34(1)(A); thus, Hallco must show that the Commissioners acted outside their official capacities in order to recover monetary damages for antitrust activities. We agree with the district court that Hallco has failed to make such a showing.

Hallco's claim against the Commissioners relied on their adoption of the county regulations pursuant to the Oklahoma Solid Waste Management Act. There has been no showing that these

---

[3]     On appeal, Hallco adds the claims that the Board wrongfully enforced the regulations against it. (Brief In Chief of Aplts. at 18.) However, this claim was not presented to the district court and, thus, will not be considered on appeal. *See* In re Walker, 959 F.2d 894, 896 (10th Cir. 1992) (issued raised for the first time on appeal will not be considered).

actions were outside the Commissioners' official duties such that they acted outside their official capacities. Therefore, we hold that the LGAA protected the Commissioners for their actions.[4]

## C. Noerr-Pennington Immunity

Hallco contends Phillips and Hawthorne are not immune from antitrust liability under the Noerr-Pennington doctrine. Hallco asserts that they misrepresented the ground water pollution issue to the county and that the Noerr-Pennington doctrine does not protect this type of conduct.

The district court determined that Phillips and Hawthorne were immune from suit under the Noerr-Pennington doctrine. (App. of Aplts, Vol. IV, Doc. 31 at 11-13.) The court found that Phillips and Hawthorne were immune from Hallco's antitrust claims regardless of their intent or purpose and that Hallco failed to support its allegations of misuse and corruption of the governmental process. *Id*. at 12.

The Noerr-Pennington doctrine exempts from antitrust liability any legitimate use of the political process by private individuals, even if their intent is to eliminate competition. Zimomra, 111 F.3d at 1503; Oberndorf, 900 F.2d at 1439. "In particular, the doctrine 'protects rights of association and petition, which would be denied if groups with common interests could not, without violating the antitrust laws, use the channels and procedures of government agencies to advocate their causes and point of view respecting resolution of their business and economic interests vis-a-vis their competitors.'" Zimomra, 111 F.3d at 1503 (quoting Oberndorf, 900 F.2d at 1440).

We agree with the district court that the actions of Phillips and Hawthorne fall squarely within this doctrine. Hallco's allegations against Phillips and Hawthorne include: family grudges,

---

[4] Based on this holding, we will not consider Hallco's argument that the Commissioners waived Noerr-Pennington immunity. *See* Brief In Chief of Aplts. at 22.

instigation of media campaigns against the landfill, and attendance and participation at public meeting.[5] (App. of Aplts., Vol. IV, Doc. 30 at 595-96 ¶34-35.) These activities either bear directly on motive, which is irrelevant, or involve the use of governmental channels and procedures to advocate a cause or point of view. Therefore, we hold that the Noerr-Pennington doctrine protects Phillips and Hawthorne from liability for their efforts to persuade the Board and the Commissioners of their position regarding landfills in their area. Furthermore, there is no evidence to support Hallco's assertion that Phillips and Hawthorne actively misrepresented the ground water pollution issue such that their use of the governmental process was not legitimate. *See e.g.* Oberndorf, 900 F.2d at 1441 ("alleged violation or misuse of an urban renewal law does not constitute the kind of illegal activity which can deprive a private party of *Noerr-Pennington* protection").

## II. Federal Claims

Hallco contends that the district court erred in determining that its constitutional claims were premature. Hallco asserts that its "as applied" Fifth Amendment takings claim [6] is ripe because seeking a permit from the Board would be futile and requiring it to seek inverse condemnation in state court would preclude its claim, not ripen it.[7] On its other federal claims, Hallco maintains that

---

[5]     To the extent Hallco asserted that Phillips wrongfully participated in the drafting of the regulations, App. of Aplts., Vol. IV, Doc. 30 at 595 ¶34, his activities were immune from suit under state action immunity as he participated as a member of the advisory committee at the request of the Board/county. Zimomra, 111 F.3d at 1500 (discussing immunity when private parties act under compulsion from the municipality).

[6]     On appeal, Hallco limits it contentions to its "as applied" takings claim and does not challenge the district court's conclusion that any "facial" takings claim was barred by the two year statute of limitations. *See* Brief In Chief of Aplts. at 22-24; App. of Aplts., Vol. IV, Doc. 31 at 13-15.

[7]     We note that Hallco had an inverse condemnation proceeding pending in state court at the time the district court issued its pre-trial order in this case. App. of Aplts., Vol. IV,

they should not be consolidated with its Fifth Amendment takings claims and should be considered individually.

A.

The district court determined that Hallco's Fifth Amendment takings claim was not ripe because it had not applied for a permit under the regulations, much less received a final adverse decision. (App. of Aplts., Vol. IV, Doc. 31 at 13.) In addition, the court concluded that, even assuming application for a permit would be futile, Hallco's claim is not ripe because it has not sought compensation from Comanche County pursuant to Oklahoma's inverse condemnation law. *Id.* We agree.

"'[A] regulatory taking is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" SK Finance SA v. La Plata County, Bd. of County Comm'rs, 126 F.3d 1272, 1276 (10th Cir. 1997) (quoting Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 720 (10th Cir. 1989) (internal quotation omitted). The particular economic impact on the property and the extent to which the regulation interferes with reasonable investment-backed expectations for use of the property are factors that simply cannot be evaluated until there is a final, definitive decision regarding how it will apply to the particular property in question. *Id.* at 1277. Hence, Hallco cannot bring an "as applied" takings claim until it has sought a permit under the regulations and received a final decision on the application.

---

Doc. 30 at 603 ¶54. *See id.* Vol. V, Doc. 43 (state court action including claims for unlawful takings and inverse condemnation based on moratorium). In addition, Hallco noted the availability of compensation through an inverse condemnation proceeding when clarifying its claim in its Revised Memorandum to the Court. *Id.* Vol. I, Doc.12 at 154 ¶B.1.

In addition, it is well settled that "'[b]efore a federal court can properly determine whether the state has violated the Fifth Amendment [takings clause], the aggrieved property owner must show first that the state deprived him of his property, and second, that the state refused to compensate him for his loss.'" SK Finance SA, 126 F.3d at 1276 (quoting Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992)). Oklahoma provides for compensation for the taking of property through inverse condemnation proceedings. Okla. Const. Art. 2 § 24. Thus, once Hallco receives a final adverse decision on its permit application, it must avail itself of Oklahoma's inverse condemnation procedures before it can initiate a federal takings claim.

Therefore, the district court did not err in concluding that Hallco's takings claim was not ripe. The Board had not rendered a final decision on how the regulations applied or impacted Hallco's proposed landfill and Comanche County had not refused to compensate Hallco for any loss.

B.

Based on its determination that Hallco's takings claim was unripe, the district court dismissed, as premature and without prejudice, Hallco's procedural due process, substantive due process, equal protection, interstate commerce, and contract clause claims, which were based on the same facts as the takings claim. (App. of Aplts., Vol. IV, Doc. 31 at 15-16.)

It is clear procedural due process, substantive due process, and equal protection claims that rest upon the same facts as a concomitant takings claim are subject to the same ripeness requirements as the underlying takings claim. Bateman v. City of West Bountiful, 89 F.3d 704, 709 (10th Cir. 1996) (collecting cases). This court is reluctant "to impose new and potentially inconsistent obligations upon the parties" in the context of factual situations that "fall squarely within" the

- 12 -

takings clause. *Id*. (quoting <u>Miller</u>, 945 F.2d at 352).

Hallco's constitutional claims rely on the same factual situation and fall squarely within the takings clause claim. Therefore, we hold that Hallco's procedural due process, substantive due process, equal protection, interstate commerce, and contract clause claims were subsumed within the takings claim and, as such, were premature. A contrary holding would enable a resourceful litigant, such as Hallco, to circumvent the ripeness requirements by artful pleading.

Furthermore, we hold that the district court did not err in dismissing Hallco's § 1983 federal civil rights claims as premature when the underlying constitutional violations were not ripe for review. Hallco based its civil rights claims on the denial of substantive due process, denial of procedural due process, denial of equal protection, unreasonable burden on interstate commerce, and impairment of obligation of contract. (App. of Aplts., Vol. I, Doc. 12 at 167-68 ¶H.1.) As noted, these underlying claims were unripe for review; thus, any § 1983 claims based on these claims were also unripe for review.[8]

### III. Supplemental Jurisdiction

Hallco contends that the district court abused its discretion when it declined supplemental jurisdiction over its state law claims and that its state law claims should be reinstated. Whether or not to exercise supplemental jurisdiction over state law claims is a decision within the sound discretion of the district court. <u>Roe v. Cheyenne Mountain Conference Resort, Inc.</u>, 124 F.3d 1221, 1237 (10th Cir. 1997). "Where federal claims have dropped out of the picture," it is the seminal teaching to dismiss the state law claims without prejudice. *Id*. Here, the district court declined to

---

[8] Based on our determination that the district court did not err in dismissing Hallco's § 1983 claims as premature, we do not address Hallco's appellate arguments that these claims were not barred by the statute(s) of limitations. *See* Brief In Chief of Aplts. at 26-33.

exercise supplemental jurisdiction once all Hallco's federal claims were dismissed. We hold that this action was entirely appropriate under the circumstances and that the district court did not abuse its discretion.

**AFFIRMED**.

Entered for the Court:

James E. Barrett
Senior United States
Circuit Judge